Nott, J.,
dissenting:
The rule is not a technicality, but a principle, that where a matter is closed voluntarily without fraud or mistake it must stay closed. Courts are not established to unsettle the transactions of men.
That a completed business transaction with the Government can be torn up for no better reason than that the judiciary *143 differ from tbe executive in tbe construction wbicb should be given to statute seems to me a proposition wbicb should be dropped as soon as stated.
When tbe Government steps into tbe common arena of buying or selling property it lays aside its prerogatives of sovereignty and is ruled in its transactions by tbe rules wbicb regulate tbe affairs of men; and when tbe individual deals with tbe Government in matters of contract, be is entitled to no different rule of law than when be deals with one of bis fellowmen. In these cases of land sales tbe Government can not sue one set of purchasers for double tbe agreed price on tbe ground that its agent, tbe Commissioner of the Laud Office, exceeded bis lawful authority by a misconstruction of tbe statutes and sold tbe land too cheap; and, if tbe Government can not reopen tbe transaction because of tbe erroneous act of its agent, tbe claimants can not.
It was said on tbe argument that tbe purchase was not voluntary because tbe contracting parties did not stand on an equal footing. Let us test that. Gould tbe claimant compel tbe Commissioner of tbe Land Office to sell tbe land? No. Could tbe Commissioner' compel tbe claimant to buy it? No. Then they did stand on an equal footing.
It may be thought that this case is like Mosby’s (133 U. S., 273); but there is not tbe slightest similarity between tbe two. Mosby’s case was founded on a law of Congress; tbe claimant was a public officer; bis services were rendered before be was ordered to pay over tbe money; be did not pay it over voluntarily, but pursuant to tbe order of bis superior. Tbe present is a case of contract. The only case like it is that of tbe laborer in tbe New Testament, who, after doing bis work and receiving bis wages, came back for, more, on tbe ground that somebody else bad done less work in tbe vineyard than be.
About tbe middle of tbe century tbe Government entered upon its land-grant railroad policy. One justification given by Congress to tbe country was that by giving away one-balf of tbe land in a railroad belt tbe other half thereby would .be doubled in value. Accordingly tbe price for such lands was doubled, and they were supposed to be a special estate carved out of the public domain. In 1874 tbe Revised Statutes expressed tbe idea by a proviso to section 2357, saying “ That the price to be paid for alternate reserved lands along the line of *144 railroads within the limits granted, by any act of Congress shall be $2.25 per acre.” Whether the interpretation by which the claimant seeks to escape from this requirement of the law is artificial or rational I do not stop to inquire. It is sufficient to show that this case rests upon a mere question of statutory construction, and that the claimant seeks, by a technical use or abuse of statutory terms, to pay no more for six hundred and forty acres of land, for the improvement of which the Government sacrificed six hundred and forty acres of adjoining land, than another man must pay for similar land five hundred miles distant from a railroad; and this after having entered into an agreement and paid the price and received the deed and obtained possession of the land.
The claimant had no personal right to the acquisition of this property. If the Land Office had fixed the price at $1.50, a dozen other men might have been before him; if he had not taken it at $2.50, a dozen other men might have been ready to take it who would not have repudiated their agreement. The case, in my judgment, is devoid of law, equity, and morals.